**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2250

REDSTONE INTERNATIONAL, INC.,

      Plaintiff - Appellant,

  v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY; THE INSURANCE MARKET, INC.,

      Defendants - Appellees.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:18-cv-00175-JPB)

Argued:  May 5, 2022                                               Decided:  June 14, 2022

Before MOTZ, QUATTLEBAUM, and HEYTENS, Circuit Judges.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Motz and Judge Heytens joined.

Michael Andrew Jacks, JACKS LEGAL GROUP, P.L.L.C., Morgantown, West Virginia, for Appellant.  Anthony Carl Sunseri, BURNS WHITE, LLC, Wheeling, West Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

This is an appeal of a district court's summary judgment order dismissing an action alleging professional negligence. Because we find no error, we affirm the district court's ruling.

I.

Redstone International, Inc., a construction firm registered in Pennsylvania, entered a contract to build a retaining wall. The wall was part of a larger project for the owner of a processing plant in West Virginia. The owner contracted with a West Virginia corporation to be the general contractor on the project, and this corporation in turn subcontracted with one entity to design the wall and with Redstone to build it. The contract between Redstone and the general contractor required Redstone to procure insurance related to its work. Redstone contacted the Insurance Market, Inc., an insurance broker, to obtain the necessary insurance. The Insurance Market negotiated an insurance policy issued by Liberty Mutual Fire Insurance Company, with Redstone as a named insured.

After problems with the construction arose, several lawsuits followed. The project's owner sued Redstone and four other entities involved in the construction in West Virginia state court. Redstone also sued the general contractor and another subcontractor in federal court, and the general contractor filed a separate federal suit against Redstone. The district court consolidated the two federal actions. Redstone demanded that Liberty Mutual defend Redstone in both actions. But Liberty Mutual refused, alleging there was no coverage under the policy for any of the claims. In response, Redstone filed this action against Liberty

Mutual and the Insurance Market, invoking the district court's diversity jurisdiction under 28 U.S.C. § 1332. Redstone sought a declaratory judgment from the district court that Liberty Mutual had a duty to defend Redstone in both the federal and state court actions, and that there was coverage under the policy. Redstone alleged three alternative counts—for negligence, breach of contract and unjust enrichment—against the Insurance Market should its claims against Liberty Mutual fail. Each count presented the same theory that the Insurance Market failed to procure for Redstone insurance that would cover its losses. In response, Liberty Mutual asserted three counterclaims against Redstone.

This case then proceeded alongside the state action and other federal action. Redstone and Liberty Mutual reached a partial settlement agreement of the claims between them; one of the terms of the agreement was for Liberty Mutual to defend Redstone in the underlying actions.

Eventually, both Liberty Mutual and the Insurance Market moved for summary judgment on Redstone's claims. The district court granted both motions in separate orders. As for Redstone's claims against the Insurance Market, the district court consolidated those claims into a single claim for "professional negligence." J.A. 1737. In stating the relevant law for making its decision, the district court cited cases from Pennsylvania and West Virginia, but it did not explicitly say which state's law it was applying. The district court determined that, to resolve the claims Redstone alleged, the following issues would need to be considered: (1) whether the insurance policy provided "completed operations coverage"; (2) whether the insurance policy provided contractual liability coverage; (3) whether there was coverage that was reasonably available that would have protected

3

Redstone should it fail its obligations under the contract, and if so, whether it was available at a reasonable price; (4) whether completed operations coverage would have benefited Redstone; and (5) whether and how contractual liability coverage would have applied to the loss Redstone suffered. The district court then concluded that these issues, on which Redstone bears the burden of proof, are beyond a lay jury's knowledge. According to the district court, these issues require a specialized knowledge about the insurance industry, including what types of insurance coverage are available, what such coverage costs and what coverages would have indemnified Redstone from the claims at issue in the underlying litigation. And since Redstone failed to offer such testimony on these issues, it could not prevail on its claims.

As for Liberty Mutual, the district court found that it had no duty to indemnify Redstone against the claims in the state or federal actions because there was no coverage under the insurance policy. The district court's order granting Liberty Mutual summary judgment on Redstone's claims also resolved Liberty Mutual's first counterclaim, which sought a declaratory judgment that there was no coverage under the policy. But the district court reserved ruling on Liberty Mutual's second and third counterclaims, which sought reimbursement for costs incurred in defending Redstone in the underlying actions.

After the district court issued its orders, Redstone appealed the order granting the Insurance Market summary judgment. However, Redstone did not appeal the order granting Liberty Mutual summary judgment on Redstone's claims. Instead, Redstone and Liberty Mutual reached a complete settlement agreement whereby Redstone agreed not to appeal the district court's order granting Liberty Mutual summary judgment on Redstone's

4

coverage claim. Upon motion by Liberty Mutual for entry of a final judgment, the district court issued an order entering a final judgment and dismissing Liberty Mutual's remaining counterclaims against Redstone, which were the only remaining claims. The district court entered its order before any briefs were submitted in this appeal.

II.

Redstone and the Insurance Market contend we have jurisdiction to review the district court's order under 28 U.S.C. § 1291. Despite the parties' agreement, we must confirm that we have appellate jurisdiction under § 1291. *See Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 125 (4th Cir. 2019) ("[P]arties may not create appellate jurisdiction by consent."). Section 1291 grants us jurisdiction to review "final decisions of the district courts." "Ordinarily, a district court order is not final until it has resolved *all* claims as to all parties." *Hixon v. Moran*, 1 F.4th 297, 301 (4th Cir. 2021) (citation omitted).

Redstone filed its notice of appeal before the district court resolved Liberty Mutual's counterclaims. Thus, the district court's order granting the Insurance Market summary judgment does not appear to have been a final decision since Liberty Mutual's counterclaims had not yet been resolved.

However, the doctrine of "cumulative finality" may alleviate procedural error in a premature appeal. *Williamson v. Stirling*, 912 F.3d 154, 170 (4th Cir. 2018). The doctrine "authorizes us to exercise appellate jurisdiction where all claims as to all parties are disposed of while the appeal is pending, and where the district court could have certified

5

the challenged order for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b)." *Id.* Here, both elements for cumulative finality are satisfied. First, while this appeal was pending, the district court entered an order dismissing Liberty Mutual's counterclaims, which were the only remaining claims in the action. Second, the district court could have certified its order granting the Insurance Market summary judgment for immediate appeal under Rule 54(b) because its order was "a decision upon a cognizable claim for relief" and was "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). Therefore, we have jurisdiction under § 1291 to review Redstone's appeal.

III.

We now turn to the merits of Redstone's appeal. Redstone advances three arguments. First, it contends the district court erred in applying West Virginia law, and not Pennsylvania law, to the question of whether expert testimony was required to prove its claims. Second, Redstone argues the district court abused its discretion by not staying its judgment until the resolution of the state court action. And third, Redstone claims the district court erred by not allowing it to obtain an expert after the close of discovery. We address these arguments in turn.

A.

We begin with Redstone's argument that the district court erred by granting the Insurance Market summary judgment.[1] Redstone argues that the district court erred by applying West Virginia law instead of Pennsylvania law to the issue of whether Redstone needed expert testimony to prove its claim of professional negligence. As noted above, the district court cited decisions from both West Virginia and Pennsylvania but did not specifically identify which state's law applied. But even assuming that the court erred in failing to specify the applicable state law or in applying West Virginia law, any such error did not prejudice Redstone because there is no meaningful difference between Pennsylvania law and West Virginia law as applied here.

In Pennsylvania, the "general rule" is that "'expert testimony is necessary to establish negligent practice in any profession.'" *Storm v. Golden*, 538 A.2d 61, 64 (Pa. Super. Ct. 1988) (quoting *Powell v. Risser*, 99 A.2d 454, 456 (Pa. 1953)). This rule "is not a concrete pronouncement as to any one profession, [but] it exhibits a recognition that when dealing with the higher standards attributed to a professional in any field a layperson's views cannot take priority without guidance as to the acceptable practice in which the

---

[1] We review a district court's order granting summary judgment de novo, "viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor." *Warfaa v. Ali*, 1 F.4th 289, 293 (4th Cir. 2021) (cleaned up). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

professional must operate." *Id.* "Expert testimony becomes *necessary* when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person." *Id.* (emphasis added). The court's determination of whether expert evidence is required generally turns on "whether the issue of negligence in the particular case is one which is sufficiently clear so as to be determinable by laypersons or concluded as a matter of law, or whether the alleged breach of duty involves too complex a legal issue so as to warrant explication by expert evidence." *Id.* at 65. The general rule applies in the context of an insurance broker procuring requested insurance coverage for another. *151 First Side Assocs., L.P. v. Hostetler*, No. 938 WDA 2014, 2015 WL 6675370, at *7 (Pa. Super. Ct. Aug. 21, 2015) ("The standards of practice and skills of an insurance broker are not necessarily matters of common knowledge.").

In West Virginia, a question of professional malpractice "is ordinarily resolved through expert testimony." *First Nat'l Bank of Bluefield v. Crawford*, 386 S.E.2d 310, 314 n.9 (W. Va. 1989). However, "if the lack of professional skill is obvious, expert testimony is not needed." *Id.* In other words, "cases may arise where there is such want of skill as to dispense with expert testimony." *Id.* (citation omitted) Although West Virginia has recognized professional malpractice in numerous fields, there does not seem to be a case involving the professional negligence of an insurance broker. *See Smith v. Stacy*, 482 S.E.2d 115, 124 (W. Va. 1996) (reversing lower court's entry of summary judgment in favor of attorney in a legal malpractice action); *First Nat'l Bank*, 386 S.E.2d at 311 (answering certified question arising out of a suit for an accountant's alleged malpractice); *Totten v. Adongay*, 337 S.E.2d 2, 8 (W. Va. 1985) (reversing a trial court's directed verdict

8

in a medical malpractice action). Nevertheless, we see no reason why West Virginia would view claims for professional negligence involving an insurance broker and its alleged failure to obtain requested coverage any differently than claims involving negligence in the context of the legal, accounting and medical professions.

In sum, there is no meaningful difference between the law of Pennsylvania and the law of West Virginia on the need for expert testimony in a case like this one alleging professional negligence against an insurance broker for failing to obtain the necessary coverage. Both states' laws provide that a party may be required to put forth expert testimony to prevail on an element of its claim for professional negligence—but only where proof of the element requires knowledge outside what a lay jury would know. Thus, any error by the district court in either failing to identify which state's law applied or applying the wrong state's law did not prejudice Redstone. *See Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 251 (4th Cir. 2022) (affirming because the appellants "claimed no prejudice from the district court's ruling" on the issue).

Furthermore, the district court did not err in holding that Redstone failed to establish a genuine issue of material fact as to whether it could prevail on its claim of professional negligence by failing to put forth expert testimony. The district court identified several issues that were beyond a lay jury's knowledge because they involved an expertise in the insurance brokerage industry. These issues included what types of insurance coverage were available, what such coverage would have cost and what coverages would have indemnified Redstone for the claims in the underlying litigation. These issues, upon which Redstone bore the burden of proof, are beyond a lay jury's knowledge. Despite Redstone's

9

arguments to the contrary, we find no error in the district court's decision requiring Redstone to put forth expert testimony to prove its claim of professional negligence.

B.

Redstone also argues that the district court should have stayed its judgment pending resolution of the state court action that involved the construction dispute. "[B]road discretion is given to the [district] court to manage its docket." *Marryshow v. Flynn*, 986 F.2d 689, 693 (4th Cir. 1993). Redstone fails to explain how the outcome here would have been any different had it been issued after resolution of the underlying state action. As such, it cannot establish any prejudice from the district court's decision. Thus, we cannot conclude that the district court committed reversable error in refusing to stay its judgment pending resolution of the state court action.

C.

Redstone's final argument is that the district court erred by not allowing it to hire an expert witness. But Redstone did not argue in the alternative that it could prove its claims by expert testimony—and thereby request additional time to hire an expert in its response to the Insurance Market's motion for summary judgment—should Redstone lose on the expert-testimony issue. Further, after the district court issued its order granting the Insurance Market summary judgment, Redstone again did not move for additional time to hire an expert. Instead, it appealed the district court's decision. On appeal, Redstone argues we should remand this case to the district court with instructions that Redstone be allowed to hire an expert. We follow the rule that "issues raised for the first time on appeal generally will not be considered." *Kadel v. N.C. State Health Plan for Teachers and State Emps.*, 12

F.4th 422, 430 (4th Cir. 2021) (citation omitted); *see also United States v. One 1971 Mercedes Benz 2-Door Coupe*, 542 F.2d 912, 914–15 (4th Cir. 1976) (refusing to consider an appellant's alternative argument when he failed to raise it before the district court). For this reason, we reject Redstone's argument as untimely.

IV.

For the reasons provided above, we affirm the district court's order granting the Insurance Market summary judgment.

*AFFIRMED*